IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 15–cv–00312–KMT

DAVID R. HAMBY,

    Plaintiff,

v.

ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## ORDER

This matter comes before the court on review of the Commissioner's denial of Plaintiff David R. Hamby's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act (the "Act"). Jurisdiction is proper under 42 U.S.C. § 405(g). Plaintiff filed his opening brief on July 15, 2015 (Doc. No. 11 ["Opening Br."]), Defendant filed her Response Brief on July 23, 2015 (Doc. No. 12 ["Resp."]), and Plaintiff filed his Reply Brief on August 7, 2015 (Doc. No. 16 ["Reply"]).

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI in September 2011, alleging that he had been disabled since April or May of 2010 by a variety of mental and physical impairments, including "neurological distress" and "full body convulsions." (*See* Doc. No. 6, Social Security Administrative Record ["AR"] at 158, 161, 197.) The Commissioner denied both applications. (*Id.* at 55, 56.) Following the denials, Plaintiff requested and received a hearing by an

Administrative Law Judge ("ALJ"). (*Id.* at 36-55, 94-95.) After the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Act, because Plaintiff was still capable of performing substantial gainful work in the national economy. (*Id.* at 29) The Appeals Council subsequently denied Plaintiff's request for review (*id.* at 1), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). Plaintiff timely sought review by the Court.

## STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

    2.    The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

    3.    The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

    4.    If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

    5.    If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v). *See also Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct

legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). However, the court may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Thompson*, 987 F.2d at 1487.

The court may not affirm an ALJ's decision based on a *post-hoc* rationale supplied in an appellate brief, since doing so would "usurp essential functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir.2004). Although the Tenth Circuit has applied the doctrine of harmless error in administrative appeals, it is only appropriate where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 1145.

## ANALYSIS

At step two of the sequential evaluation process, the ALJ found that Plaintiff's seizure disorder was a severe impairment. (AR at 14.) At step three, however, he found that this disorder did not meet or equal a section 11.00 listing and therefore, was not severe enough to qualify Plaintiff as disabled under Appendix 1 of the Commissioner's regulations. (*Id.* at 24.) Plaintiff contends the ALJ erred in making this finding and that he failed to offer sufficient explanation or justification for the same. (Opening Br. at 19-30.)

Appendix 1 contains a list of impairments that the Commissioner considers disabling regardless of age, education, or work experience. 20 C.F.R. §§ 404.1525(a), 416.925(a); Pt. 404, Subpt. P, App. 1 (listing impairments). The plaintiff has the burden of proving that his

4

impairments meet or equal all the criteria of an Appendix 1 listing. *Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. 2001). If the plaintiff's impairments meet or equal all the criteria for an Appendix 1 listing, then the impairment is presumed disabling and the plaintiff is presumed disabled. *Williams*, 844 F.2d at 751; *Yuckert*, 482 U.S. at 141. Section 11.00 of Appendix 1 includes impairments related to neurological disabilities, including Listing 11.02 for epilepsy. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.00. In this case, Plaintiff argues the ALJ should have found that his seizure disorder was equal, or medically equivalent, to Listing 11.02. (Opening Br. at 19-30; Reply at 3-5.)

A plaintiff's impairment *meets* the criteria of Listing 11.02 when the impairment is "convulsive epilepsy, (grand mal or psychomotor)," that is "documented by [a] detailed description of a typical seizure pattern, including all associated phenomena; occur[es] more frequently than once a month in spite of at least 3 months of prescribed treatment" and includes either "daytime episodes (loss of consciousness and convulsive seizures)" or "nocturnal episodes manifesting residuals which interfere significantly with activity during the day." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.02. A plaintiff's impairment can *equal* Listing 11.02 even if the Plaintiff does not "exhibit one or more of the findings specified in the particular listing . . . ." 20 C.F.R. § 416.926(b)(1)(i)(A). An impairment is medically equivalent to Listing 11.02 if the plaintiff has other findings that are "at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1)(ii). The determination of medical equivalence requires the ALJ to compare the plaintiff's impairments with "closely analogous listed impairments." 20 C.F.R. § 416.926(b)(1)(ii)(2).

5

At step three, the ALJ stated, "[I] considered sections 11.00 and 12.00 concerning neurological and mental impairments and find[] that the clinical, laboratory and/or radiographic findings necessary to meet a Listing level impairment have not been met." (AR at 24.) The ALJ then set out a lengthy analysis explaining why Plaintiff's mental impairments did not meet any of the listings in 12.00. (*Id.* at 24-25.) He did not, however, offer any further explanation or analysis as to why Plaintiff's seizure disorder did not meet or equal any section 11.00 listing. As result, Plaintiff argues the ALJ's step-three finding about Plaintiff's seizure disorder "was not articulated in a manner which would permit meaningful judicial review." (Opening Br. at 21.)

When the ALJ makes a determination that is unfavorable to the plaintiff, the ALJ is required to issue a "statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting 42 U.S.C. 405(b)(1)). The ALJ is not required to discuss every piece of evidence, but the ALJ must demonstrate that he considered all the evidence and he must discuss "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. Without specific findings supported by evidence, the court "cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [the plaintiff's] impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion." *Id.* at 1009.

There is no question the ALJ's discussion at step three is insufficient to allow for judicial review. However, the Commissioner argues that the basis of the ALJ's step three finding can be derived from his step two analysis. (Resp. at 12-13.) The Commissioner notes that merely

6

because the ALJ did not include explanation within the step three analysis as to why Plaintiff's seizure disorder did not meet or equal a listing, the decision can still be affirmed if the findings at other steps of the sequential evaluation process provide a proper basis for the same. (*Id.* at 13.) *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (holding that an ALJ's failure to explain why a plaintiff's impairments do not meet an Appendix 1 listing at step three of the review constitutes reversible error unless the ALJ offers findings "elsewhere in the ALJ's decision" that "provide a proper basis" for that conclusion).

In his step two analysis, the ALJ did include an in-depth discussion of Plaintiff's medical records and history pertaining to his seizure disorder. (AR at 23-25.) However, in reviewing the same, the court must still speculate as to the basis for the ALJ's finding that Plaintiff did not meet an 11.00 listing. The step two analysis includes discussion of medical records showing significant seizure activity over prolonged time periods. (AR at 21-24.) There are also additional records of seizure activity not discussed by the ALJ. (AR at 490.)

The Commissioner argues that the ALJ's references to portions of the record indicating Plaintiff failed to take his medication as prescribed and also continued to smoke marijuana, in spite of his treating physician's warning that doing so could made his seizures worse and/or more frequent, provide the basis for his step three decision regarding 11.00 listings. (AR at 23-25.) However, this reasoning is not definitive within the step two analysis. Moreover, in reviewing the record, the court finds that not all of the instances noted by the ALJ were actually examples of Plaintiff's non-compliance.

For example, the ALJ noted that on October 29, 2012, Plaintiff's blood work, drawn during an emergency room visit, showed that Dilantin, previously prescribed by Plaintiff's

7

treating physician to help control seizures, was "nearly undetectable." (AR at 23.) However, as Plaintiff points out, the Dilantin had only been prescribed eleven days before, *see id.* at 487-88, and though the emergency room physician described the levels as "nearly undetectable," the level was 8.1. (*Id.* at 585.) The therapeutic reference range for Dilantin is 10 - 20. (*Id.* at 448.) Plaintiff's prescription of Dilantin was increased and one week later, on November 5, 2012, Plaintiff's blood work showed Dilantin at 15.2, within the reference range. (*Id.* at 448, 585.)

Additionally, the ALJ stated that in January 2013, Plaintiff reported to a physician that he had stopped taking Depakote "because he did not want to take it anymore." (*Id.* at 24.) However, on December 13, 2012, Plaintiff's treating physician specifically discontinued Depakote because "it is not helping control seizures." (*Id.* at 506.) The ALJ also stated that during January 2013, records show that Plaintiff was taking twice as much Klonopin as prescribed. (AR at 23.) Yet, medical records show that Plaintiff had been incorrectly provided a Klonopin prescription of 2 mg tablets instead of the 1 mg tablets ordered by his physician. (AR at 508, 512.)

The court acknowledges portions of the record do support a finding that Plaintiff failed to wholly comply with his physician's directed treatment. However, it is not clear that these instances were the basis of the ALJ's conclusion that Plaintiff did not meet Listing 11.02. Moreover, as noted above, not every instance the ALJ noted was actually an example of Plaintiff's non-compliance.

The Commissioner also argues that it was reasonable for the ALJ to consider the same in assessing whether the Plaintiff met or equaled Listing 11.02. (Resp. at 16-17.) Certainly, an ALJ can consider a plaintiff's use of marijuana in ruling on a disability claim. *See* 42 U.S.C. §§

423(d)(2)(C), 1382c(a)(3)(J) (disqualifying a plaintiff from benefits if alcoholism or drug addiction is a contributing factor material to the determination of disability).  In this case, the ALJ referenced instances in Plaintiff's medical records indicating he continued to use marijuana after being instructed not to do so.  However, the ALJ never made any finding or statement indicating this was a basis for his conclusion that Plaintiff did not meet or equal a section 11.00 listing.  (AR at 23, 24.)  A decision cannot be affirmed on the basis of appellate counsel's *post hoc* rationalizations for agency action.  *Knipe v. Heckler*, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  Nor may a reviewing court create *post hoc* rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

The ALJ's conclusion that Plaintiff's seizure disorder did not medically equal an Appendix 1 listing is unsupported by any factual findings, discussion, or explanation.  "Such a bare conclusion is beyond meaningful judicial review." *Clifton*, 79 F.3d at 1009.

Accordingly, it is

**ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner.  It is further

**ORDERED** that Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 25th day of March, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge